PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, NY 10017
Telephone: 212/561-7700
Facsimile: 212/561-7777
Robert J. Feinstein, Esq.
Gabrielle A. Rohwer, Esq.

Counsel for Grant Thornton Ltd., in its capacity as
Receiver for Blockbuster Canada Co.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| BLOCKBUSTER CANADA CO., | Case No. 11-12433 (____) |
| Debtor. | |

**VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF A
FOREIGN MAIN PROCEEDING AND GRANTING RELATED RELIEF**

Grant Thornton Ltd., in its capacity as the duly-appointed receiver (the "Foreign

Representative" or "Receiver") of the above-captioned debtor in a foreign proceeding

("Blockbuster Canada" or the "Chapter 15 Debtor"), which receivership commenced pursuant to

an order of the Ontario Superior Court of Justice, Commercial List (the "Canadian Court"),

entered on May 4, 2011, in the proceeding commenced pursuant to the Canadian *Bankruptcy and*

*Insolvency Act*, R.S.C. 1985, C. B-3, as amended (the "BIA") and section 101 of the *Courts of*

*Justice Act*, R.S.O. 1990 c. C.43, as amended (the "CJA"), encaptioned, Home Trust Company

as trustee (the "Collateral Trustee") under a certain Collateral Trust Agreement made by

Blockbuster Canada Co., Applicant, and Blockbuster Canada Co., Respondent, Court File No.

CV-11-9200-00CL (the "Canadian Proceeding"), respectfully submits this verified petition

(the "Chapter 15 Petition")[1] seeking entry of an order, substantially in the form attached hereto as Exhibit A, granting: (a) recognition by this Court of the Foreign Representative as the Chapter 15 Debtor's "foreign representative" as defined in section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"); (b) recognition of the Canadian Proceeding as a "foreign main proceeding" pursuant to sections 1515, 1517 and 1520 of the Bankruptcy Code with respect to the Chapter 15 Debtor; and (c) granting appropriate additional relief pursuant to section 1521 of the Bankruptcy Code.[2]

1.       To this end, and as detailed hereafter, the Chapter 15 Debtor respectfully submits that it has satisfied each of the requirements for recognition under chapter 15 of the Bankruptcy Code. Specifically:

- Grant Thornton Ltd., acting in its capacity as the court-appointed receiver of Blockbuster Canada, qualifies as a "foreign representative" as defined in section 101(24), and, therefore, can petition this Court directly for recognition of the Canadian Proceeding under section 1509.

- The Canadian Proceeding is a "foreign proceeding" as defined in section 101(23).

- The Canadian Proceeding is a "foreign main proceeding" as defined in section 1502(4) with respect to the Chapter 15 Debtor, insofar as Canada is the Chapter 15 Debtor's "center of main interests" ("COMI"), as such

---

[1]   This Chapter 15 Petition is verified by Michael Creber, Senior Vice President of the Receiver, as evidenced by his Statement of Verification attached hereto as Exhibit A.

[2]   In support of the Petition, the Foreign Representative has filed contemporaneously herewith the *Declaration of Michael Creber in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Granting Related Relief* (the "Creber Declaration"), dated May 19, 2011, which is incorporated herein by reference.

term is used in sections 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code.

- In particular, the following factors, among others, demonstrate that the COMI of the Chapter 15 Debtor is in Canada:

  - Toronto serves as the headquarters and the location of the persons managing the Chapter 15 Debtor, and all of its employees reside and work in Canada.

  - The Chapter 15 Debtor's assets are located in Canada, with Canadian law governing disputes relating thereto.

  - Books and records of the Chapter 15 Debtor and the source of its working capital needs are in Canada.

  - The Receiver is located in Canada.

2.      Thus, the relief sought in this Petition should be granted.

## Jurisdiction

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § § 1334 and 157(b)(2)(P).

4.      This case was properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of the instant petition for recognition of the Canadian Proceeding under section 1515 of the Bankruptcy Code.

5.      Venue is proper pursuant to 28 U.S.C. § 1410.

6.      The statutory bases for relief are sections 1504, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## Background

### Blockbuster Canada

7.     Blockbuster Canada is a company organized and existing under the laws of the Canadian province of Nova Scotia and is an indirect wholly-owned, subsidiary of Blockbuster Inc. ("Blockbuster US"), a debtor in the jointly administered chapter 11 bankruptcy cases of Blockbuster Inc. and certain of its affiliated debtors, pending before this Court as *In re Blockbuster Inc., et al.*, Case No 10-14997 (BRL) (the "Blockbuster US Case"). *See Affidavit of Jeffery J. Stegenga Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions* [Blockbuster US Case Docket No. 0003] (the "Stegenga Declaration") at ¶ 114.

8.     Blockbuster Canada has operated video rental stores in Canada using the Blockbuster trademarks since 1990.[3] The company presently employs approximately 4,000 employees in over 400 stores across ten Canadian provinces. Blockbuster Canada is the leading rental retailer in Canada providing in-home movie and game entertainment.

9.     Blockbuster Canada's corporate head office is located in Etobicoke, Ontario. The company operates 198 retail locations in Ontario, employing approximately 50% of its employees in the province.

### The License and Master Services Agreements Between Blockbuster US and Blockbuster Canada

10.     On May 8, 2009, Blockbuster US and Blockbuster Canada entered into a License Agreement (the "License Agreement"), pursuant to which Blockbuster US granted Blockbuster Canada the right to use Blockbuster US's intellectual property, including, but not limited to, trade secrets, copyrights, Blockbuster trademarks (the "Blockbuster Trademarks"),

---

3     Upon information and belief, for nearly twenty years, Blockbuster Canada used the Blockbuster trademarks without the benefit of any written agreement, and thus may have a common law right to the use of the trademarks.

inventions, and proprietary computer programs (collectively, the "<u>Intellectual Property</u>"). *See* <u>Exhibit A</u> to Creber Declaration.

11.     Also on May 8, 2009, Blockbuster US and Blockbuster Canada entered into a Master Services Agreement (the "<u>MSA</u>"), pursuant to which Blockbuster US agreed to provide Blockbuster Canada various accounting and information technology services (collectively, the "<u>Services</u>"), including providing electronic access to systems in connection with the Services necessary for the operation of Blockbuster Canada's stores. *See* <u>Exhibit B</u> to the Creber Declaration.

12.     Pursuant to the License Agreement, Blockbuster Canada agreed to pay Blockbuster US a license fee equal to three percent (3%) of Blockbuster Canada's gross revenue, payable in regular intervals, but at least quarterly (the "<u>License Fees</u>"). *See* License Agreement at §§ XI(A) and (B)(1).

13.     Pursuant to the MSA, Blockbuster Canada agreed to pay Blockbuster US a service fee equal to one percent (1%) of Blockbuster Canada's gross revenue, payable in regular intervals, but at least quarterly (the "<u>Service Fees</u>" and together with the License Fees, the "<u>Fees</u>"). *See* MSA at §§ V(A) and (B)(1).

14.     On approximately ten occasions between April 2009 and June 2010, Blockbuster US instructed Blockbuster Canada to electronically transfer money to Blockbuster US (the "<u>Upstream Transfers</u>"). The Upstream Transfers, in the aggregate, totaled approximately $31.4 million. Documents evidencing these Upstream Transfers are annexed to the Creber Declaration as <u>Exhibit C</u>. The Fees were credited against the Upstream Transfers on the books and records of Blockbuster Canada. *See* Creber Declaration at ¶ 12.

**Blockbuster US Chapter 11 Proceedings and Sale**

15.     On September 23, 2010 (the "Petition Date"), Blockbuster US and certain of its affiliates (collectively, the "Blockbuster US Debtors") commenced the Blockbuster US Case by filing petitions for relief under chapter 11 of the Bankruptcy Code.

16.     On February 21, 2011, the Blockbuster US Debtors filed a motion (the "Sale Procedures Motion") seeking an order approving, among other things, procedures for the solicitation of bids and an auction (the "Auction") in connection with the sale of substantially all of the Blockbuster US Debtors' business and assets.  On March 17, 2011, the Court entered an order [Blockbuster US Case Docket No. 1223] (the "Sale Procedure Order") approving the Sale Procedures Motion.

17.     The Auction was held on April 5, 2011 in accordance with the terms of the Sale Procedure Order.  On that day, conditional upon Bankruptcy Court approval, the Blockbuster US Debtors agreed to sell their assets to DISH Network Corporation ("DISH" or "Purchaser") for a purchase price of approximately US $320 million, subject to various adjustments (the "Sale Transaction").

18.     On April 14, 2011, this Court entered an Order [Blockbuster US Case Docket No. 1602] (the "Sale Order") approving the Sale Transaction.  On April 26, 2011, the Court entered a further order [Blockbuster US Case Docket No. 1723] (the "Supplemental Order") approving the Amended and Restated Asset Purchase and Sale Agreement by and Among Blockbuster Inc., the Debtor Subsidiaries Party Hereto, and DISH, dated as of April 20, 2011 (the "Purchase Agreement").  Among other things, pursuant to the Purchase Agreement as amended, DISH and the Blockbuster US Debtors agreed to split off the shares of Blockbuster Canada, Inc., the parent corporation of (then) non-debtor Blockbuster Canada, such that the initial closing would not include those shares.  Pursuant to a separate Share Purchase Agreement

By and Between Blockbuster Canada, Inc. and BBI Operating L.L.C. (a newly-formed entity owned by DISH), dated as of April 26, 2011, DISH in effect has an option to acquire all of the issued and outstanding shares of Blockbuster Canada for no additional consideration at a second closing to be scheduled at any time on or before July 21, 2011.  The Blockbuster US Debtors and the Purchaser closed the Sale, excluding the Blockbuster Canada, Inc. shares, on April 26, 2011 (the "Closing Date").

19.     Pursuant to section 2.5(b) of the Purchase Agreement, the Purchaser has 90 days from the Closing Date to determine which contracts it will designate to be assumed and assigned to the Purchaser.  *See* Purchase Agreement at § 2.5(b).  Pursuant to the Purchase Agreement and the Supplemental Order, DISH is required to provide notice to the Blockbuster US Debtors when it determines it will not designate a particular contract to be assumed (the "DISH Rejection Notice").  Upon receipt of a DISH Rejection Notice, the Blockbuster US Debtors are required to move to reject the specified contract(s) under section 365 of the Bankruptcy Code as soon as practicable thereafter.  *See* Purchase Agreement at § 2.5(b).  Despite having a ninety-day option to close on the Blockbuster Canada shares and a ninety-day period in which to make a decision whether to assume or reject the Agreements, DISH recently gave Blockbuster US a DISH Rejection Notice pertaining to the Agreements, fewer than 30 days into these periods.  This notice thus led the Blockbuster US Debtors to file the *Debtors' Motion (i) to Reject Certain Executory Contracts and (ii) Establish Expedited Rejection Procedures for Non-Lease Executory Contracts* [Blockbuster US Case Docket No. 1761] (the "Rejection Motion") on May 11, 2011, seeking, *inter alia*, authorization to reject the Agreements as executory contracts pursuant to section 365 of the Bankruptcy Code.  The Rejection Motion was filed after the commencement of the Canadian Proceeding and the entry of the Receivership Order (as defined

below), which stayed all actions against Blockbuster Canada's property and contracts absent the Receiver's consent or an order of the presiding Canadian Court, neither of which has been obtained. Blockbuster Canada intends to vigorously contest the Rejection Motion.

**Events Leading to Blockbuster Canada Receivership**

20. Blockbuster Canada's principal liabilities are to movie studio suppliers to Blockbuster US. Specifically, Warner Home Video, a division of Warner Bros. Home Entertainment ("Warner"), Twentieth Century Fox Home Entertainment LLC ("Fox"), and Sony Pictures Home Entertainment Inc. ("Sony" and collectively with Warner and Fox, the "Studios") were significant suppliers to Blockbuster US. In March of 2010, in order to induce the Studios to continue to supply product and to extend trade credit to Blockbuster US, Blockbuster Canada provided an unlimited written guarantee of Blockbuster US's obligations (the "Guaranteed Obligations") to the Studios dated March 31, 2010 (the "Guarantee"). As security for the Guaranteed Obligations, Blockbuster Canada granted to the Collateral Trustee, for the benefit of the Studios, a continuing general security interest in all of its present and after acquired personal property, as described in a general security agreement dated March 31, 2010 (the "GSA"). Blockbuster US is currently indebted to the Studios in an aggregate approximate amount of US $70 million. Blockbuster Canada also is similarly obligated indebted to the Collateral Trustee on behalf of the Studios in that amount.

21. On February 3, 2011, pursuant to Section 2.1(d)(i) of the CJA, the Collateral Trustee made a formal written demand (the ("Demand") for payment on Blockbuster Canada. The Demand confirmed that: (a) Blockbuster US had failed to pay its Guaranteed Obligations to the Studios totaling US $70,193,321.93 when due; (b) on February 3, 2011 the Studios had, pursuant to the CJA, instructed the Collateral Trustee to demand payment against Blockbuster Canada of the Guaranteed Obligations; and (c) accordingly, the Collateral Trustee

demanded that Blockbuster Canada pay the Guaranteed Obligations totaling $70,193,321.93 on or before February 10, 2011.  Pursuant to the terms of the Demand, the Guaranteed Obligations became payable to the Collateral Trustee by no later than February 10, 2011.  No payment has been made by Blockbuster Canada in respect of the Guaranteed Obligations.

22.     Between February 14, 2011 and March 21, 2011, Blockbuster Canada, the Collateral Trustee, and the Studios entered into a series of four forbearance agreements.  The last of these agreements expired on March 21, 2011, and has not been renewed or extended.  Since March 21, 2011, Blockbuster Canada has been in default of its obligations to the Collateral Trustee.

23.     Upon information and belief, sometime in late April of 2011, the directors and officers insurance liability policy covering the Blockbuster US Debtors' and Blockbuster Canada's directors and officers terminated or was allowed to lapse.  Thereafter, on or about May 2, 2011, Blockbuster Canada's remaining directors and officers resigned their positions effective at 5:00 p.m. on May 3, 2011.  Blockbuster US advised the Studios that if they did not take action to address this urgent situation, Blockbuster US would cause Blockbuster Canada to be placed into an insolvency proceeding.  Based on the continuing default and these latest developments, on May 3, 2011, the Collateral Trustee petitioned the Canadian Court for an order pursuant to section 243(1) of the BIA and section 101 of the CJA, appointing a receiver over all of the current and future property, assets and undertakings of Blockbuster Canada (the "Receivership Motion").  *See* Exhibit D to the Creber Declaration.

24.     On May 3, 2011, the Canadian Court, per the Honorable Mr. Justice Morawetz, issued an Order Appointing Receiver (the "Receivership Order") (CV-11-92000-00CL), granting the Collateral Trustee's Receivership Motion, and, among other things:

(a)       appointing Grant Thornton as receiver, without security, of all of the assets, undertakings and properties of Blockbuster Canada, including all proceeds thereof (the "Property") pursuant to section 243(1) of the BIA and section 101 of the CJA;

(b)       empowering and authorizing the Receiver to act at once with respect to the Property, including exercising control of the Property, protecting the Property, managing the business of Blockbuster Canada, and ceasing to carry on all or any part of the business; and

(c)       prohibiting any proceeding or enforcement process in any court or tribunal from commencing or continuing against the Receiver, Blockbuster Canada, or the Property, except with the written consent of the Receiver or leave of the court.

*See* Exhibit E to the Creber Declaration.

## Relief Requested

25.      By this Petition, the Foreign Representative respectfully requests that the Court enter an order: (a) granting recognition by this Court of the Foreign Representative as the Chapter 15 Debtor's "foreign representative" as defined in section 101(24) of the Bankruptcy Code; (b) granting recognition of the Canadian Proceeding as a "foreign main proceeding" pursuant to sections 1515, 1517, and 1520 of the Bankruptcy Code with respect to the Chapter 15 Debtor; and (c) granting appropriate additional relief pursuant to section 1521 of the Bankruptcy Code.

26.     Congress designed chapter 15 to protect assets and other interests in the U.S. for parties having commenced restructuring proceedings in a foreign jurisdiction. Relief under chapter 15 prevents dismemberment of U.S. or non-U.S. businesses through actions commenced in the U.S. and avoids disruptions that otherwise could derail a party's foreign restructuring.

27.     Consistent with these principles, the Foreign Representative commenced the Chapter 15 Case to obtain full recognition and enforcement of the Canadian Proceeding, particularly in view of the Blockbuster US Debtors' pending Rejection Motion to reject the Agreements, which are critical to Blockbuster Canada's ongoing business operations.

**The Canadian Proceeding Is a Foreign Proceeding**

28.     Bankruptcy Code § 101(23) defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

29.     Although Congress enacted chapter 15 in 2005, and courts have not yet fully developed precedent on it, at least one court has opined on the factors necessary to demonstrate that a proceeding constitutes a "foreign proceeding." In *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009), the court examined chapter 15's legislative history as well as the *Model Law on Cross-Border Insolvency*, which ultimately formed the basis for chapter 15, and disaggregated § 101(23) into a seven-factor test to determine whether a

proceeding constitutes a "foreign proceeding."  Specifically, the court found that a "foreign proceeding" must be a proceeding:

(i)     in which "acts and formalities [are] set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice;"

(ii)    that has either a judicial or an administrative character;

(iii)   collective in nature, in that it considers the rights and obligations of all creditors;

(iv)    located in a foreign country;

(v)     authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor that has commenced such proceedings is not actually insolvent;

(vi)    in which the debtor's assets and affairs are subject to the control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding; and

(vii)   for the purpose of reorganization or liquidation.

*See Betcorp*, 400 B.R. at 275-82; *see also In re Overnight and Control Commission of Avánzit, S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (discussing factors).

30.     As further supported by the facts discussed in the Creber Declaration, the Chapter 15 Debtor's proceeding in the Canadian Court constitutes a "foreign proceeding" under the *Betcorp* test.

31.     ***First***, the Canadian Proceeding was commenced pursuant to the BIA R.S.C. 1985, c. B-3, a statute which, among other things, allows for the orderly disposition of a debtor's estate and the distribution of the value of the debtor's assets to its various creditors in accordance with the priority of their various claims.

32. **Second**, the proceeding is "judicial," having been commenced before the Canadian Court, which has the power pursuant to the BIA to appoint a receiver whenever it appears "just and convenient" to do so and to enter any interim or final orders that it thinks fit.

33. **Third**, the Canadian Proceeding is collective in nature in that it considers the rights of all creditors. Indeed, all creditors, whether secured or unsecured, are entitled to participate in the Canadian Proceeding. In *Betcorp*, for instance, the bankruptcy court discussed the contrasts between a true collective proceeding, where such proceeding "considers the rights and obligations of all creditors," and a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *See Betcorp*, 400 B.R. at 281. Although appointed by a secured creditor of Blockbuster Canada, the Receiver derives its power and authority from the Receivership Order appointing it. Pursuant to the Receivership Order, the Receiver is an officer of the Canadian Court and is not subject to the control or direction of the party that appointed it, *i.e.*, the secured creditor. In this regard, the Receiver acts in a fiduciary capacity as it concerns all interested parties.

34. **Fourth**, the Canadian Court is located in Toronto, Canada.

35. **Fifth**, as described above, the BIA is a Canadian statute governing, among other things, insolvency and corporate receiverships, as contemplated by the Canadian Proceeding.

36. **Sixth**, the Canadian Court supervises the Chapter 15 Debtor's assets and affairs during the pendency of the Canadian Proceeding, as any party-in-interest seeking to object to the Receivership Order may appeal to, and obtain relief from, the Canadian Court.

37. **Finally**, the Canadian Proceeding has one objective: the orderly sale of the Chapter 15 Debtor and/or its assets. The Foreign Representative has instituted a motion in the

Canadian Court seeking authority to conduct a sale process for Blockbuster Canada's assets. The Foreign Representative therefore respectfully submits that the Chapter 15 Debtors have commenced the Canadian Proceeding for a reorganization or liquidation purpose, as required by § 101(23)]. *Cf. In re Avánzit*, 385 B.R. at 533-34 (recognizing a "financial restructuring" as a "reorganization" for purposes of the sections 101(23) and 1517 analysis, especially where the plan at issue provides for repayment of debts).

38.     At least one court already has recognized that a Canadian receivership proceeding under the BIA constitutes a "foreign proceeding." *See In re Wellpoint Systems Inc., et al.,* Bankr. D. Del. Case No. 11-10423 (MFW), Docket No. 31 (granting recognition of a proceeding under the BIA as a foreign main proceeding).

39.     Accordingly, this Court should find that the Canadian Proceeding satisfies § 101(23) and constitutes a "foreign proceeding" as required by § 1517.[4]

**The Foreign Representative Qualifies as a Foreign Representative**

40.     In addition to qualifying as a foreign proceeding as defined in the Bankruptcy Code, to obtain recognition under chapter 15, the Canadian Proceeding must have a "foreign representative." *See* 11 U.S.C. § 1517.

41.     The Foreign Representative submits that it commenced the Chapter 15 Case as a duly appointed and authorized "foreign representative" within the meaning of section 101(24) which provides as follows:

---

[4]  In addition, the Foreign Representative submits that recognition of the Canadian Proceeding and any orders that issue from the Canadian Court during the pendency of the Canadian Proceeding would not be "manifestly contrary to the public policy of the United States" so as to justify this Court's exercise of its discretion under sections 1506 of the Bankruptcy Code to refuse to recognize the Canadian Proceedings. Indeed, as a sister common law jurisdiction, courts "have consistently extended comity to Canadian bankruptcy proceedings." *Smith v. Dominion Bridge Corp.*, 1999 WL 111465, at *3 (E.D. Pa. 1999).

The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

42.     Attached as <u>Exhibit E</u> to the Creber Declaration is a copy of the order entered by the Canadian Court commencing the Canadian Proceeding (the "<u>Receivership Order</u>").  Pursuant to the terms of the Receivership Order, the Foreign Representative is "authorized and empowered to act as the foreign insolvency representative in respect of the within proceedings for all purposes including having these proceedings recognized in jurisdictions outside Canada."  *See* Receivership Order at ¶ 30.  The Receivership Order goes on to request "the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United State to give effect to this Order and to assist the Receiver and its agents in carrying out the terms of this Order."  *See* Receivership Order at ¶ 31.

43.     The above language from the Receivership Order explicitly authorizes the Foreign Representative to act as a "foreign representative" in not only the Canadian Proceeding, but also in proceedings outside of Canada.  Thus, the Foreign Representative respectfully submits that it has met the requirements of section 101(24).  *See In re Alitalia Linee Aeree Italiane S.p.A.*, S.D.N.Y. Case No. 08-14321 (BRL), Docket No. 23 (finding Italian bankruptcy administrator, translated as a "receiver" in the Italian bankruptcy proceeding qualified as a "foreign representative" as referred to in section 101(24) of the Bankruptcy Code); *In re Wellpoint Systems Inc., et al.,* Bankr. D. Del. Case No. 11-10423 (MFW), Docket No. 31 (granting recognition of a Canadian court-appointed receiver as a foreign representative).

**The Canadian Proceeding is a Foreign Main Proceeding**

44. The Canadian Proceeding constitutes a "foreign main proceeding" for the Chapter 15 Debtor as defined in section 1517(b)(1).

45. Section 1517(b)(1) provides that a "foreign main proceeding" is a "foreign proceeding" pending in the country where the debtor has its center of main interests, or "COMI." *See* 11 U.S.C. § 1517(b)(1).

46. Section 1516(c) provides that, "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd* 389 B.R. 325 (S.D.N.Y. 2008). However, the presumption that the location of the debtor's registered office is also the debtor's COMI was adopted merely for "speed" and administrative convenience, and is therefore rebuttable. *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd* 371 B.R. 10 (S.D.N.Y. 2007) (citing H.R. Rep. 109-31, pt. 1, 109th Cong., 1st Sess. at 112-13 (2005)). And, as described below, courts look to a number of factors to determine a debtor's COMI. *Bear Stearns*, 374 B.R. at 129–30 (finding that COMI did not lie at the location of the debtor's registered office in the Cayman Islands, as administration of the debtor's business occurred in the U.S., and its principal interests, assets, and management resided in the U.S.).

47. Though the Bankruptcy Code does not specify the factors to determine a debtor's COMI, courts have generally identified five relevant factors: (a) the location of the debtor's headquarters; (b) the location of those persons or entities managing the debtor (which, in certain instances, could be the holding company headquarters); (c) the location of the debtor's primary assets; (d) the location of the majority of the debtor's creditors or of a majority of the creditors affected by the case; and (e) the jurisdiction whose law would apply to most disputes.

*Bear Stearns*, 389 B.R. at 336 (citing *SPhinX*, 351 B.R. at 116-17; *In re Tradex Swiss AG*, 384

B.R. 34, 43 (Bankr. D. Mass. 2008)); *Betcorp*, 400 B.R. at 287-88 (discussing *Bear Stearns*,

*Tradex* and certain European insolvency law cases for COMI analysis). "The flexibility inherent

in chapter 15 strongly suggests, however, that [a] court should not apply such factors

mechanically," but with an eye toward "chapter 15's emphasis on protecting the reasonable

interests of parties in interest pursuant to fair procedures and the maximization of the debtor's

value." *SPhinX*, 351 B.R. at 117.

48.     An analysis of these factors demonstrates that Canada constitutes the

Chapter 15 Debtors' COMI.

49.     *First,* the Chapter 15 Debtor is organized and existing under the laws of

Canada, and has no other corporate presence apart from Blockbuster Canada's Toronto

headquarters.

*50.*     *Second,* the Foreign Representative, who has been duly appointed to

takeover Blockbuster Canada's business, and Blockbuster Canada's employees are permanently

located in and work in Canada. Further, the sale of the Chapter 15 Debtor's assets will take

place in Canada from the planning to the execution. The Foreign Representative has retained

Canadian counsel to assist with this process.

51.     *Third,* the Chapter 15 Debtor is a Canadian company, with substantially

all of its assets located in Canada. In particular, the Company's 400 stores employing

approximately 4000 people are all located in Canada.

52.     *Fourth,* the Receivership Order is governed by the laws of the Province of

Ontario and the laws of Canada applicable therein. Furthermore all of the Security Agreements,

the GSA, the Guarantee and the Collateral Trust Agreement are governed in accordance with laws of the Province of Ontario and the federal laws of Canada.

53. **Fifth,** several other factors demonstrate that the Chapter 15 Debtor's COMI lies in Canada. First, books and records of the Chapter 15 Debtor and the source of its working capital needs are in Canada. Second, audits of the Chapter 15 Debtor are performed or directed by the Toronto branch of PricewaterhouseCoopers Inc.

54. The Foreign Representative respectfully submits that this Court should find that Blockbuster Canada's COMI lies in Canada for the Chapter 15 Debtor, and the Court should recognize the Canadian Proceeding as a "foreign main proceeding" under § 1517(b) with respect to the Chapter 15 Debtor.

## The Chapter 15 Debtor Requires and Is Entitled to the Protections of Section 1521

55. In addition to the protections granted to a foreign debtor upon classification as a "foreign main proceeding" pursuant to section 1520(a), the Court is empowered to grant "any appropriate relief" pursuant to section 1521(a) of the Bankruptcy Code where such relief is necessary to effectuate the purpose of chapter 15 and to protect the Chapter 15 Debtor's assets or the interests of the Chapter 15 Debtor's creditors. *See* 11 U.S.C. 1521(a). However, relief under section 1521 (a) is available only if the interests of the creditors and other interested entities, including the debtor and interested parties located outside of the United States, are sufficiently protected. *See* 11 U.S.C. 1522(a); *see also In re SPhinX*, 351 B.R. at 113 (noting that in enacting section 1522(a), "Congress directed the court to focus on the interests of all creditors and other interested parties, not just those of U.S. parties."). Section 1521(a) provides, in relevant part, as follows:

> (4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

(5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court; … and

(7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a)(4), (5) and (7).

56.     The Receiver requires the ability to examine witnesses and take discovery in connection with the Rejection Motion to fully investigate the issues surrounding the requested rejection. Furthermore, the Receiver may need to conduct additional discovery as the case proceeds to achieve a better understanding of the relationship between Blockbuster Canada and Blockbuster US. So that there is no question that the Receiver is the appropriate person to administer any and all of Blockbuster Canada's assets in the United States, including but not limited to responding to the Rejection Motion, the Receiver must be entrusted with the administration of all of the Chapter 15 Debtor's assets. Finally, because there is already a controversy between Blockbuster Canada and Blockbuster US regarding the Agreements, the Receiver requests that it be granted any additional relief that may be available to a Trustee. With the granting of this relief, the Receiver will not need to seek Court authority every time it needs additional relief.

57.     The relief requested by the Receiver pursuant to section 1521(a) is necessary to assist the Canadian Court and the Receiver in carrying out the effective administration of the Canadian Proceeding. Without the relief provided for section 1521(a), the Receiver would not be able to ensure the fair and efficient administration of the Canadian Proceedings in a manner that protect the interests of all of Blockbuster Canada's creditors, nor would the Receiver be able to protect and maximize, without interference, the value of

Blockbuster Canada's assets in the United States for the benefit of Blockbuster Canada's creditors.  Moreover, such relief is necessary to effectuate the purpose of chapter 15.

**Compliance with Bankruptcy Rule 2002(q)(1)**

58.　　Bankruptcy Rule 2002(q)(1) prescribes 21 days' notice of a hearing to consider granting the relief requested in a chapter 15 petition.  Fed. R. Bankr. P. 2002(q)(1).  Bankruptcy Rule 9007 permits this Court to shorten the time, form, and manner in which notice shall be given.  Fed. R. Bankr. P. 9007.

59.　　As set forth in the *Ex Parte Motion Pursuant to Bankruptcy Rules 2002(q) and 9006(c) to Shorten the Notice Period With Respect to Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Granting Related Relief*, filed concurrently herewith, the Foreign Representative requests that the recognition hearing be scheduled for June 2, 2011, the date the Rejection Motion is scheduled to be heard.  Notice of the hearing on the Chapter 15 Petition will be provided to those parties required to receive notice pursuant to Rule 2002 or their counsel and to other interested parties in accordance with the procedures established by the Court.  The Foreign Representative proposes to notify parties by electronic mail, overnight delivery, or otherwise by U.S. mail.

60.　　The above-described notice meets the requirements of Rule 2002(q) because it provides the required parties with adequate notice, and it is also in keeping with this Court's "discretion to set the particularities of notice procedures" pursuant to Rule 9007.  *See In re Pierce*, 435 F.3d 891, 892 (8th Cir. 2006).

**No Prior Request**

61.　　No prior request for the relief sought in this Petition has been made to this or any other court.

<u>Notice</u>

62.     The Foreign Representative has provided notice of this Petition on: (a) the

Master Service List as defined in the *Order Pursuant to 11 U.S.C. § 105(a) and 9007*

*Implementing Certain Notice and Case Management Procedures*, dated October 21, 2010

[Blockbuster US Case Docket No. 365]; (b) counsel to Blockbuster US; (c) counsel to DISH; and

(d) all other parties that have requested service in these cases pursuant to Bankruptcy Rule 2002.

In light of the relief requested, the Foreign Representative submits that no further notice is

necessary.

WHEREFORE, the Foreign Representative respectfully requests entry of an order,

substantially in the form attached hereto as <u>Exhibit B</u>, granting the relief requested herein and

such other and further relief as is just and proper.

Dated: May 20, 2011                     PACHULSKI STANG ZIEHL & JONES LLP


*/s/ Robert J. Feinstein*
Robert J. Feinstein, Esq.
Gabrielle A. Rohwer, Esq.
780 Third Avenue, 36th Floor
New York, NY 10017
Tel: (212) 561-7700
Fax: (212) 561-7777
Email: rfeinstein@pszjlaw.com
          grohwer@pszjlaw.com

*Counsel for Grant Thornton Ltd., in its capacity as
Receiver for Blockbuster Canada Co.*

# EXHIBIT A

**(Statement of Verification by Michael Creber)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| BLOCKBUSTER CANADA CO., | Case No. 15-_____ |
| Debtor. | |

## STATEMENT OF VERIFICATION

Pursuant to 28 U.S.C. § 1746, Michael Creber declares as follows:

I am a Senior Vice President of Grant Thornton Ltd., which was appointed as the receiver and foreign representative of Blockbuster Canada Co. by the Ontario Superior Court of Justice, Commercial List. I have full authority to verify this petition and am informed and do believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of May, 2011

s/ Michael Creber_____
Michael Creber on behalf of Grant Thornton Ltd., in its capacity as the court-appointed receiver and duly authorized foreign representative of Blockbuster Canada Co.

# **EXHIBIT B**

**(Proposed Recognition Order)**

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, NY 10017
Telephone: 212/561-7700
Facsimile: 212/561-7777
Robert J. Feinstein, Esq.
Gabrielle A. Rohwer, Esq.

Counsel for Grant Thornton Ltd., in its capacity as
Receiver for Blockbuster Canada Co.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| BLOCKBUSTER CANADA CO., | Case No. 15-_____ |
| Debtor. | |

**ORDER PURSUANT TO 11 U.S.C. §§ 1504, 1509, 1515, 1517, 1520,**
**AND 1521 RECOGNIZING FOREIGN REPRESENTATIVE AND**
**FOREIGN MAIN PROCEEDING AND GRANTING RELATED RELIEF**

Upon the Petition for Recognition and Chapter 15 Relief (the "Petition")[1] seeking

(a) recognition of the proceeding under Canadian law (the "Canadian Proceeding") currently

pending before the Ontario Superior Court of Justice, Commercial List (the "Canadian Court"),

as a "foreign main proceeding" with respect to the Chapter 15 Debtor pursuant to sections 1515

and 1517 of title 11 of the U.S. Code (the "Bankruptcy Code") and; (b) recognition of the

Foreign Representative as the "foreign representative" as defined in section 101(24) of the

Bankruptcy Code of the above-captioned debtor (the "Chapter 15 Debtor"); and the Creber

Declaration and the exhibits annexed thereto; this Court having jurisdiction to consider the

Petition and the relief requested therein pursuant to 28 U.S.C. § § 157 and 1334, and 11 U.S.C.

---

[1] Unless otherwise defined in this Order, all capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Petition.

§ § 109 and 1501; consideration of the Petition and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); venue being proper before this Court pursuant to 28 U.S.C. § 1410; appropriate, sufficient, and timely notice of the filing of the Petition having been given by Foreign Representative, pursuant to Rules 1011(b) and 2002(q) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); it appearing that the relief requested in the Petition is necessary and beneficial to the Chapter 15 Debtor; and no objections or other responses having been filed that have not been overruled, withdrawn, or otherwise resolved; and upon after due deliberation and sufficient cause appearing therefore, the Court finds and concludes as follows: [2]

a)       The Chapter 15 Case was properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

b)       The Canadian Proceeding is pending in Canada, where the Chapter 15 Debtor's "center of main interests," as referred to in section 1517(b)(1) of the Bankruptcy Code, is located, and accordingly, the Canadian Proceeding is a "foreign main proceeding" with respect to the Chapter 15 Debtor pursuant to section 1502(4), and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(l).

c)       The Foreign Representative is a "person" pursuant to section 101(41) of the Bankruptcy Code and is the "foreign representative" of the Chapter 15 Debtor as such term is defined in section 101(24), and the Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).

---

[2]     The findings and conclusions set forth herein and in the record of the hearing on the Petition constitute this Court's findings of facts and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

d) The Foreign Representative is entitled to all the relief provided pursuant to Bankruptcy Code sections 1520 and 1521 of the Bankruptcy Code without limitation, because those protections are necessary to effectuate the purposes of chapter 15 and to protect the assets of the Chapter 15 Debtor and the interests of the Chapter 15 Debtor's creditors.

e) The relief granted hereby is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the U.S., warranted pursuant to section 1521(4) and (5) of the Bankruptcy Code, and will not cause any hardship to any parties in interest that is not outweighed by the benefits of granting that relief.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT**

1. The Petition is granted.

2. The Canadian Proceeding is recognized as a foreign main proceeding pursuant to sections 1517(a) and 1517(b)(l) of the Bankruptcy Code with respect to the Chapter 15 Debtor, and all the effects of recognition as set forth herein shall apply.

3. The Foreign Representative and the Chapter 15 Debtor shall be entitled to the full protections and rights enumerated under section 1521(a)(4), (5) and (7);

4. The Foreign Representative is hereby established as the representative of the Chapter 15 Debtor.

5. The banks and financial institutions with which the Chapter 15 Debtor maintains bank accounts or on which checks are drawn or electronic payment requests made in payment of prepetition or postpetition obligations are authorized and directed to continue to service and administer the Chapter 15 Debtor's bank accounts without interruption and in the ordinary course and to receive, process, honor, and pay any and all such checks, drafts, wires, and automatic clearing house transfers issued, whether before or after the date hereof, and drawn

on the Chapter 15 Debtor's bank accounts by respective holders and makers thereof and at the direction of the Foreign Representative.

6.      The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

7.      Notice of this Order and the Petition shall be given in accordance with the procedures further prescribed by the Court and served on: (a) the Master Service List as defined in the *Order Pursuant to 11 U.S.C. § 105(a) and 9007 Implementing Certain Notice and Case Management Procedures*, dated October 21, 2010 [Blockbuster US Docket No. 365]; (b) counsel to Blockbuster US; (c) counsel to DISH; and (d) all other parties that have requested service in these cases pursuant to Bankruptcy Rule 2002.

8.      Service in accordance with this Order shall be deemed good and sufficient service and adequate notice for all purposes. The Foreign Representative, the Chapter 15 Debtor, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

9.      Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this order shall be effective immediately and enforceable upon its entry; (b) the Foreign Representative is not subject to any stay of the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Foreign Representative is authorized and empowered, and may in its discretion without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

10.     This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through the Chapter 15 Case, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.


New York, New York
Date: _____, 2011

_____
United States Bankruptcy Judge