Martin N. Flics
Paul S. Hessler
LINKLATERS LLP
1345 Avenue of the Americas
New York, NY 10105
(+1) 212 903 9000 (Tel)
(+1) 212 903 9100 (Fax)

*Attorneys for Blockbuster L.L.C.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------x

*In re*                                                          Chapter 15

Blockbuster Canada Co.,                          Case No. 11-12433 (BRL)

                              Debtor.

--------------------------------------------------x

**LIMITED OBJECTION OF BLOCKBUSTER L.L.C. TO VERIFIED PETITION UNDER**
**CHAPTER 15 FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING AND**
**GRANTING RELATED RELIEF**

Blockbuster L.L.C. (f/k/a BBI Operating, L.L.C., "**New Blockbuster**"), by and

through its undersigned counsel, hereby files this limited objection (the "**Limited Objection**") to

the Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and

Granting Related Relief (the "**Verified Petition**") filed by Grant Thornton Ltd., in its capacity as

the receiver (the "**Receiver**") of the above-captioned debtor in a foreign proceeding

("**Blockbuster Canada**").  In support of this Limited Objection, New Blockbuster states as

follows:

**PRELIMINARY STATEMENT**

1.       New Blockbuster does not object to the recognition of Blockbuster Canada's

receivership proceeding in Canada (the "**Canadian Proceeding**") as a foreign main proceeding.

New Blockbuster does object to the relief requested in the Verified Petition to the extent such

relief seeks to (a) interfere with New Blockbuster's rights to the assets it purchased free and clear of any and all interests pursuant to that certain *Order Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 Authorizing and Approving (A) the Sale of Debtors' Assets Free and Clear of Interests and (B) Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases to the Purchaser* (the "**Original Sale Order**") and that certain *Supplemental Order, Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002, 4001, 6004, and 9014, Approving Amended and Restated Asset Purchase and Sale Agreement by and among Blockbuster, Inc., the Debtor Subsidiaries Party Thereto, and DISH Network Corporation* (the "**Supplemental Sale Order,**" and together with the Original Sale Order, the "**Sale Orders**") entered by this Court in the pending chapter 11 cases of Blockbuster Inc. and its related debtors (collectively, "**Blockbuster US**"), and (b) grant the Receiver unfettered rights to conduct discovery. In particular, New Blockbuster objects to the Receiver's use of chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") to stay or delay the enforcement of New Blockbuster's rights to the assets it purchased from Blockbuster US, specifically certain intellectual property (the "**Blockbuster IP**") that had been licensed previously by Blockbuster Inc. to Blockbuster Canada.

2.      New Blockbuster makes this Limited Objection because of the procedural context in which the Verified Petition was filed. The Verified Petition and accompanying pleadings recount only part of the Canadian Proceedings to date. From the outset of the Canadian Proceeding, the Receiver has asserted rights to use (and has refused to confirm that it has no right to sell any such rights to use) the Blockbuster IP. New Blockbuster has vigorously defended its unencumbered ownership of the Blockbuster IP. The Receiver fails to disclose in the Verified Petition and accompanying papers that there have been proceedings before the Canadian Court,

meetings among advisors for both the Receiver and New Blockbuster, and hard-fought negotiation over the Receiver's alleged right to use the Blockbuster IP. Even though Blockbuster Canada's alleged rights in the Blockbuster IP are a key issue in the Canadian Proceeding that must be addressed as soon as possible, the Receiver is attempting to use two court proceedings, the Canadian Proceeding and this chapter 15 case, to interfere with New Blockbuster's rights to property it acquired (including the Blockbuster IP) free and clear of any and all interests, including contractual rights, pursuant to this Court's orders. Prompt enforcement of this Court's Sale Orders and New Blockbuster's rights in the Blockbuster IP is not only consistent with the Canadian Proceeding, but is necessary to (a) allow resolution of the key disputed issue in the fast moving Canadian sales process, and (b) prevent any further harm to New Blockbuster. New Blockbuster respectfully submits that recognition of Blockbuster Canada's foreign main proceeding should be tailored to prevent any interference with the prompt enforcement of New Blockbuster's rights.

3. The Receiver is closely tied to parties that actively participated in Blockbuster US's chapter 11 cases. Specifically, the Receiver, Grant Thornton, acted as the financial advisor in Canada to the Collateral Trustee for certain studios (the "**Studios**"[1]) which actively participated in Blockbuster US's chapter 11 cases before this Court. Those Studios were members of the Ad Hoc Studio Committee of Blockbuster Inc., which participated in litigating and negotiating the procedures for the sale process approved by this Court. As part of that process, the Studios negotiated a settlement with Blockbuster and Cobalt Video Holdco LLC, the stalking horse purchaser, that provided the Studios certain guaranteed payments if the Studios

---

[1] The Studios include Sony Pictures Home Entertainment Inc. ("**Sony**"), Warner Bros. Home Entertainment Inc. ("**Warner**") and Twentieth Century Fox Home Entertainment LLC ("**Fox**").

supported the sale.[2] (March 10, 2011 Hearing Tr. at 17-27, **Exhibit A** to the Declaration of Kiah Beverly-Graham dated June 6, 2011 (the "**Beverly-Graham Declaration**")). The Studios supported the sale of Blockbuster US's assets to New Blockbuster, and neither the Studios nor Blockbuster Canada objected to the free and clear sale of those assets to New Blockbuster.

4.      The Studios are Blockbuster Canada's only secured creditors. On March 31, 2010, the Studios obtained from Blockbuster Canada an unlimited guarantee of Blockbuster US's obligations. As security, Blockbuster Canada granted to Home Trust Company, as Collateral Trustee (the "**Collateral Trustee**"), for the benefit of the Studios, a continuing general security interest in all of its present and after acquired personal property. On April 21, 2011, the Collateral Trustee retained Grant Thornton Limited as financial consultant to review, report, and make recommendations to the Studios on Blockbuster Canada's business, assets, operations and continued financial viability.

5.      On or about May 3, 2011, 19 days after entry of the Sale Order and 7 days after entry of the Supplemental Sale Order, the Collateral Trustee, on behalf of the Studios filed an application with the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") for the appointment of the Receiver. That day, the Canadian Court issued an order among other things, appointing the Receiver to act as receiver, without security, of all of the

---

[2]      The settlement is reflected in the Purchase Agreement and involves certain specified payments to the "Specified Studios" (as defined in the Purchase Agreement, and which term includes the Studios), to be made on closing in accordance with the order of payment set out in section 3.3(c) of the Purchase Agreement, if the Studio Condition (as defined in the Purchase Agreement) is satisfied. The Specified Studios are entitled to additional payments in accordance with sections 3.3(f) and 3.3(g) of the Purchase Agreement if the Studio Condition is satisfied at closing and continues to be satisfied for a period of time thereafter. Importantly, the Studio Condition preserves the Studios' rights "with respect to enforcing [their] rights against Blockbuster Canada or with respect to the [collateral pledged by Blockbuster Canada]," but does not seek to preserve any rights under the License Agreement in connection with the transfer of the Blockbuster IP or the Master Services Agreement. Indeed, at the hearing to approve the Purchase Agreement, counsel for the Studios expressly stated that the Studios "support and have supported the motion, the bid procedures order and the sale to DISH and believe on that basis they've satisfied the studio condition." (April 7, 2011 Hearing Transcript at 34-35, **Exhibit B** to the Beverly-Graham Declaration). At no point did the Studios or Blockbuster Canada seek to preserve any rights under the License Agreement or the Master Services Agreement.

assets, undertakings and properties of Blockbuster Canada, including all proceeds thereof. The Receiver is represented by the counsel that represented the Studios in Blockbuster US's chapter 11 cases.

6.      Since its appointment, the Receiver has repeatedly asserted rights to use, and has not confirmed that it cannot sell, certain Blockbuster IP that, prior to the sale to New Blockbuster and entry of the Sale Orders, Blockbuster US had licensed to Blockbuster Canada. New Blockbuster intends to bring proceedings in this Court to enforce the Sale Orders. Because of stay issues arising in the Canadian Proceedings, New Blockbuster is in discussions with the Receiver about an agreed litigation process to enforce New Blockbuster's rights.

7.      In light of this procedural posture, any order recognizing the Canadian Proceeding[3] should expressly exclude any stay of any proceedings related to the enforcement of New Blockbuster's rights in the Blockbuster IP, including any determination that Blockbuster Canada no longer has any rights in the Blockbuster IP.  As discussed in more detail below, the enforcement of New Blockbuster's rights in the Blockbuster IP and the determination that Blockbuster Canada has no rights in the Blockbuster IP by this Court is necessary for the efficient and effective administration of the Canadian Proceeding.

## BACKGROUND

**A.      The Blockbuster US Sale Process**

8.      As this Court is aware and as set forth in paragraphs 15 through 18 of the Verified Petition, Blockbuster US engaged in a robust sale process under this Court's supervision to sell substantially all of the assets of Blockbuster US after it had become clear that Blockbuster US would not be able to reorganize through a plan of reorganization.  Ultimately, DISH Network

---

[3]      Capitalized terms used by not defined herein shall have the meanings ascribed to such terms in the Verified Petition.

Corporation ("**DISH**") submitted the winning bid for substantially all of Blockbuster US's assets. On April 26, New Blockbuster, as the permitted assignee of DISH under the Purchase Agreement, consummated the Sale Transaction and acquired substantially all of the assets of Blockbuster US.

9. The Purchase Agreement provides for the sale of all of the intellectual property owned by Blockbuster US, which includes the Blockbuster IP, free and clear of any and all Interests (defined below). *See Purchase Agreement* §2.1(i). Pursuant to the Sale Orders, this Court approved the sale of all of the assets of Blockbuster US, including the intellectual property and Blockbuster IP, free and clear of any and all "Liens (as defined in the Purchase Agreement), Claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of sight off, or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise (collectively, including without limitation, Liens, Claims and other Interests, the "***Interests***")." *See Original Sale Order*, ¶¶ L, 4 (emphasis added); *Supplemental Sale Order* ¶ 1. Moreover, this Court "forever barred, estopped and permanently enjoined [all persons and entities] from asserting, prosecuting or otherwise pursuing Interests against [New Blockbuster] or its property" "arising under or out of, in connection with, or in any way relating to, [Blockbuster US], the Assets [which includes the Blockbuster IP]…" *See Original Sale Order*, ¶ 6.

10. All parties in interest, including Blockbuster Canada and the Studios had adequate notice (directly, through counsel and/or by virtue of publication in the New York Times and The Wall Street Journal) of the proposed Sale Transaction. None of Blockbuster Canada or any of the Studios objected to the proposed sale to New Blockbuster. Indeed, the Studios were actively engaged in the sale process and negotiated for New Blockbuster to assume certain liabilities owed by Blockbuster US to the Studios. *See April 7 2011 Hearing Transcript* at 34-35. Similarly situated creditors did not receive such beneficial treatment.

11. In accordance with section 2.5(c) of the Purchase Agreement, New Blockbuster notified Blockbuster US that New Blockbuster would not be designating as Purchaser Assumed Contracts (as defined in the Purchase Agreement) two agreements between Blockbuster US and Blockbuster Canada: a License Agreement dated May 8, 2009 (the "**License Agreement**") pursuant to which Blockbuster Canada was permitted to use certain of the Blockbuster IP, including the trademarks or trade names "BLOCKBUSTER" and/or "BLOCKBUSTER CANADA," certain point of sale software, and other intellectual property that belonged to Blockbuster US, and a Master Services Agreement dated May 8, 2009 (the "**Master Services Agreement**") pursuant to which Blockbuster US provided certain goods and services to Blockbuster Canada in connection with the operation of stores in Canada, including accounting, payment processing and information technology support services. Pursuant to the Purchase Agreement, Blockbuster US promptly moved to reject the License Agreement and Master Services Agreement. However, because the interests of Blockbuster Canada in the Blockbuster IP were extinguished by the Sale Orders and New Blockbuster has not assumed any obligations

to Blockbuster Canada under either agreement,[4] the Rejection Motion merely releases Blockbuster US from any further obligations to Blockbuster Canada related to assets that Blockbuster US no longer owns.

12.     This Court expressly retained jurisdiction "to, among other things, interpret, implement, and enforce the terms and provisions of [the] Sale Order, the Purchase Agreement and the Ancillary Agreements . . . including, but not limited to… to determine any disputes or claims with respect to the Purchase Agreement and Ancillary Agreements." *See Original Sale Order*, ¶ 15; *see also Supplemental Sale Order*, ¶ 10.

**B.      Canadian Proceedings**

13.     Paragraphs 20 through 24 of the Verified Petition set out the events leading up to the commencement of the Canadian Proceeding, but nowhere in the Verified Petition or the related papers does the Receiver provide this Court with a description of the events that occurred during the seventeen day period between commencement of the Canadian Proceeding on May 3, 2011, and the filing of the Verified Petition on May 20, 2011.

14.     Since its appointment, the Receiver has asserted rights on several occasions to use the Blockbuster IP and has not confirmed it cannot sell the Blockbuster IP in connection with the sale of the assets of Blockbuster Canada.  Indeed, the initial proposed Receivership Order submitted by the Receiver contained a provision permitting the Receiver to use the Blockbuster IP, which the Canadian Court struck.  *See Receivership Order*, ¶ 3(q).  Counsel for New Blockbuster has informed counsel for the Receiver on multiple occasions that the Sale Orders extinguished any rights or interests that Blockbuster Canada had to use the Blockbuster IP.  On May 13, 2011, the Receiver filed a motion seeking approval of a sales process to sell Blockbuster

---

[4]      The Purchase Agreement states that New Blockbuster assumed only those liabilities expressly set forth in the Purchase Agreement. Neither the License Agreement nor the Master Services Agreement are among the assumed Liabilities. *See Purchase Agreement*, §§ 2.3, 2.4.

Canada, including on a going concern basis (the "**Canadian Sale Motion**," **Exhibit C** to the Beverly-Graham Declaration). Again, the Receiver asserted rights to the Blockbuster IP and has not confirmed that it cannot sell its alleged interests in the Blockbuster IP. *See Canadian Sale Motion,* Tab 2 ("First Report of the Receiver") ¶¶ 20-21, 25. Counsel for New Blockbuster and the Receiver met to attempt to resolve the open issues related to the Blockbuster IP after the Canadian Sale Motion was filed, but to no avail. In connection with the Canadian Sale Motion, New Blockbuster's undersigned counsel submitted an affidavit to the Canadian Court, attesting that, among other things, the Blockbuster IP had been sold pursuant to the Sale Orders to New Blockbuster free and clear of any and all Interests, contractual or otherwise, that Blockbuster Canada may have had with respect to such intellectual property and that this Court retained jurisdiction to resolve any disputes related to the Sale Orders and Purchase Agreement.

15.     New Blockbuster and the Receiver have presented their respective positions with respect to the Blockbuster IP to the Canadian Court. On May 20, 2011, the Canadian Court entered a "consensual" order approving a sales process for substantially all of the assets of Blockbuster Canada (the "**Canadian Sales Process Order**," **Exhibit D** to the Beverly-Graham Declaration). The Canadian Sales Process Order is the product of intense negotiations among New Blockbuster and the Receiver and was "consensual" only to the extent that it was replete with reservations of rights by the Receiver and New Blockbuster with respect to the Blockbuster IP. New Blockbuster consented to Blockbuster Canada's limited use of the Blockbuster IP in connection with the Canadian sales process through the earlier of June 30, 2011 or the date on which the Receiver is no longer pursuing a going concern sale. *See Canadian Sales Process Order*, ¶ 11. New Blockbuster reserved all rights in respect of the Blockbuster IP, including seeking compensation for the Receiver's use of the Blockbuster IP. *See Canadian Sales Process*

A13535770

*Order*, ¶¶ 9-10.  In its endorsement of the Canadian Sales Process Order, the Canadian Court noted that additional hearings regarding the matters set out in the Canadian Sales Process Order would be "inevitable." (**Exhibit E** to the Beverly-Graham Declaration.)  The parties are currently discussing a consensual process to permit the expeditious litigation of their claims.

## LIMITED OBJECTION

16.     As stated above, New Blockbuster does not object to recognition of the Canadian Proceeding as a foreign main proceeding.  In addition to recognition, however, the Receiver has also requested certain supplemental relief that (a) may delay or stay the enforcement of New Blockbuster's rights under the Sale Orders thereby causing further harm to New Blockbuster, and (b) provide the Receiver with broad and unfettered power to seek unspecified information from unidentified third parties. *Verified Petition*, ¶ 56.

17.     As set forth below, New Blockbuster objects to the additional relief requested by the Receiver to the extent such request (a) purports to interfere with the enforcement of New Blockbuster's rights to the assets it acquired from Blockbuster US, and (b) is overly broad and fails to comply with the Bankruptcy Code and related rules of procedure.

**I.      The Requested Relief Must Not Interfere With New Blockbuster's Rights in the Assets Purchased From Blockbuster US Pursuant to the Sale Orders**

18.     New Blockbuster respectfully requests that any relief granted to the Receiver be circumscribed so as not to interfere with New Blockbuster's rights in the Purchased Assets (as defined in the Purchase Agreement), including the Blockbuster IP.  New Blockbuster requests that recognition be granted only on the condition that the Receiver consent to the initiation and

prosecution in this Court of litigation proceedings to resolve New Blockbuster's claims regarding the assets transferred to it and to enforce the Sale Orders as against the Receiver.[5]

19.     Neither the Receiver nor the Studios, who are the real parties in interest, would suffer any harm from the conditioning of relief as requested by New Blockbuster. Indeed, prompt resolution of the parties' rights to the Blockbuster IP is necessary for purposes of the Canadian Proceedings. Moreover, the Receiver and the Studios are intimately familiar with the facts underlying the free and clear sale of Blockbuster US's assets to New Blockbuster, because the Studios actively participated in the proceedings in this Court relating to the section 363 sale to New Blockbuster. In addition, the Receiver, which was the financial advisor retained by the Collateral Trustee for the benefit of the Studios, is represented by the same US counsel that represented the Studios in the sale process. Moreover, neither the Studios nor Blockbuster objected to the free and clear sale to New Blockbuster.

20.     As such, resolution of New Blockbuster's rights under the Sale Orders can be accomplished expeditiously. Those Sale Orders provide for the sale of the Blockbuster IP free and clear of any and all Interests, including contractual rights of Blockbuster Canada with respect to such intellectual property. *See Original Sale Order*, ¶ 4; *Supplemental Sale Order*, ¶ 1; *see also Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 548 (7th Cir. 2003) (where a party had notice that property in which it had an interest was being transferred free and clear of all interests and encumbrances, and such party did not object to the transfer, the party could not thereafter assert its rights in the transferred property); *In re FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir. 2002) (a licensee of intellectual property should not be entitled to the special bankruptcy protections reserved for intellectual property because the

---

[5]     The litigation also will seek to confirm that New Blockbuster has no obligation to provide to Blockbuster Canada, and that Blockbuster Canada has no right to receive, goods or services under either the License Agreement or the Master Services Agreement.

A13535770

11

intellectual property was transferred free and clear of all interests and encumbrances and the licensee, who had notice of the transfer, did not object to the transfer); *Cheslock-Bakker & Assoc. Inc. v. Kremer (In re Downtown Athletic Club)*, 2000 WL 744126, at *4 (S.D.N.Y. Jun. 9, 2000) (affirming sale free of "any interest" has a broad meaning, including defendant's leasehold interest in property); *In re R.J. Dooley Realty, Inc.*, No. 09-36777, 2010 WL 2076959, at *7-8 (Bankr. S.D.N.Y. May 21, 2010) (same). Blockbuster Canada and the Studios had notice that the Blockbuster IP would be transferred to New Blockbuster free and clear of any rights of Blockbuster Canada unless New Blockbuster expressly assumed the Canadian Agreements. None of them objected. Further, the Studios, at whose direction the Canadian Proceeding was commenced, could have attempted to negotiate for the assumption of the Canadian Agreements or the preservation of Blockbuster Canada's rights in the Blockbuster IP, but they did not even attempt to do so. As New Blockbuster did not assume the Canadian Agreements, New Blockbuster owns the Blockbuster IP free and clear of any rights Blockbuster Canada once had in such intellectual property.

21. Moreover, the notion that intellectual property may be sold in an insolvency proceeding free and clear of any contractual rights a licensee may have had in the intellectual property is a concept accepted in Canada. In *Royal Bank of Canada v. Body Blue Inc.*, **Exhibit F** to the Beverly-Graham Declaration, the Canadian Court overseeing the Canadian Proceeding held that a free and clear sale of intellectual property under Canadian insolvency laws extinguished the licensee's contractual right to use such intellectual property – even where the licensee only received notice of the sale after it was approved but did not take action to appeal the order.

22.     The Blockbuster IP was transferred to New Blockbuster free and clear of any rights of Blockbuster Canada on April 26, 2011 – a full week prior to the commencement of the Canadian Proceeding.  Blockbuster Canada, therefore, did not have any rights in the Blockbuster IP at the time of the commencement of the Canadian Proceeding.

23.     A decision on New Blockbuster's rights to the Blockbuster IP is ripe and urgently needed to end uncertainty in the Canadian Proceeding and Canadian sales process.  The Receiver and New Blockbuster have fully articulated their respective positions to the Canadian Court. The Canadian Sales Process Order is replete with reservations of rights related to the Blockbuster IP.  These reservations of rights only allow Blockbuster Canada to continue using the Blockbuster IP through the end of the Canadian sales process – June 30, 2011.  The dispute regarding Blockbuster Canada's alleged rights in the Blockbuster IP is a matter of US bankruptcy law and an interpretation of this Court's prior orders.  This Court, therefore, is the proper forum to determine the parties' rights to the Blockbuster IP.  Indeed, this Court expressly retained jurisdiction to adjudicate disputes related to the Purchase Agreement and Sale Orders. *See Original Sale Order*, ¶ 15; *Supplemental Sale Order*, ¶ 10.

24.     Accordingly, New Blockbuster requests that any recognition be conditioned on the Receiver's consent to the initiation and prosecution by New Blockbuster of litigation to enforce the Sale Orders.

## II.     The Receiver's Request for Additional Discovery-Related Relief Pursuant to Section 1521(a)(4) is Improper and Should Be Denied

25.     The Receiver seeks authority to fully investigate the issues surrounding the Rejection Motion and additional discovery as the case proceeds to achieve a better understanding of the relationship between Blockbuster Canada and Blockbuster US.  *See Verified Petition*, ¶ 56. To the extent that discovery is sought in connection with the Rejection Motion, New Blockbuster

asserts that such discovery is unnecessary. A debtor has broad discretion to assume or reject executory contracts and the court's role is to ensure that the debtor exercises its best business judgment in determining whether a particular executory contract is beneficial or burdensome to the debtor's estate. *See e.g.*, *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993); *see also 3 Collier on Bankruptcy* ¶ 365.03[2]. The Receiver has not articulated, and cannot articulate, any basis to challenge Blockbuster US's business judgment. Indeed, Blockbuster US no longer has any rights in the property subject to the License Agreement or the Master Services Agreement and only **one** employee, and so cannot possibly perform its obligations thereunder. The Canadian Agreements are a burden to Blockbuster US's estate with no countervailing benefits.

26. With respect to any additional discovery, nowhere in the Verified Petition or related papers filed with the Court, has the Receiver identified (a) what information is sought, (b) from whom information would be requested, or (c) the basis for seeking such information. Instead, the Receiver seeks unfettered authority from this Court to obtain unidentified information from unidentified parties, offering only the mere assertion that the relief requested is "necessary to assist the Canadian Court and the Receiver in carrying out the effective administration of the Canadian Proceeding." *Verified Petition*, ¶ 57.

27. Although section 1521(a)(4) of the Bankruptcy Code does provide that a court may grant appropriate relief "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities," that section surely was not intended to provide a foreign representative rights beyond those available to a trustee, a debtor in possession, or other party in interest in other cases under the Bankruptcy Code. *See e.g.*, *In re Brierly*, 145 B.R. 151, 169-170 (Bankr. S.D.N.Y. 1992)

(denying foreign representative under section 304 of the Bankruptcy Code blanket authority to seek discovery from unnamed persons who may have information the foreign representative deems relevant and stating that the court would consider discovery requests that identified the person to be examined and need for examination).

28.     For example, in chapter 7 or 11 cases, parties may obtain discovery in only three instances: (a) in connection with an adversary proceeding pursuant to the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); (b) in connection with a contested matter pursuant to Bankruptcy Rule 9014; and (c) pursuant to a motion for examination under Bankruptcy Rule 2004.  *See* Fed. R. Bankr. P. 2004, 7001-7087, and 9014.  A trustee, debtor in possession, or other party in interest cannot obtain broad authority from the bankruptcy court at the outset of a case to obtain unspecified information from unspecified parties.

29.     In considering discovery requests under Bankruptcy Rule 2004, courts "balance the competing interest of the parties and weight the relevance of and necessity of the information sought."  *See In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).  In requesting discovery under Bankruptcy Rule 2004, the movant must satisfy an affirmative burden of establishing good cause to obtain the requested information.  *Id.*

30.     The Receiver has neither provided a description of the type of information it wishes to discover nor the party from whom it wishes to seek discovery.  Absent such basic information, this Court cannot even begin to determine the relevance of the requested information.  The Receiver has not attempted to satisfy the affirmative burden of showing the good cause behind its overly broad discovery request.  Accordingly the additional discovery requested is premature at best.

## CONCLUSION

WHEREFORE, New Blockbuster respectfully requests that this Court:

(a) condition recognition on the Receiver's consent to the initiation and prosecution of litigation by New Blockbuster to construe and enforce the Sale Orders; (b) exclude any such litigation from any stay imposed or resulting from recognition; (c) deny the Receiver's request to conduct discovery in connection with the Rejection Motion; (d) clarify that any additional discovery sought by the Receiver must be sought in accordance with Bankruptcy Rules 2002, 7001-7087, and 9014; and (e) award such other relief as this Court deems just and proper.

Dated:     New York, New York
           June 6, 2011

                                        Respectfully submitted,

                                        Linklaters LLP

                                        By:    /s Martin N. Flics
                                               Martin N. Flics
                                               Paul S. Hessler
                                               1345 Avenue of the Americas
                                               19th Floor
                                               New York, NY 10105
                                               (212) 903-9000
                                               (212) 903-9100 (fax)

                                        Attorneys for Blockbuster L.L.C.